**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS MCDONOUGH,<br><br>    Plaintiff,<br><br>v.<br><br>LIBERTY PROPERTY TRUST, WILLIAM P. HANKOWSKY, THOMAS C. DELOACH, JR., KATHERINE DIETZE, ANTONIO FERNANDEZ, DANIEL P. GARTON, ROBERT G. GIFFORD, DAVID L. LINGERFELT, MARGUERITE NADER, LAWRENCE D. RAIMAN, and FREDRIC J. TOMCZYK,<br><br>    Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Thomas McDonough ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Liberty Property Trust ("Liberty Property" or the "Company") and its Board of Trustees (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Liberty Property by Prologis, Inc. ("Prologis").

## JURISDICTION AND VENUE

2.	The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.	This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.	Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and maintains properties in this District.

5.	In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.	Plaintiff is, and has been at all relevant times hereto, an owner of Liberty Property common shares.

7.	Defendant Liberty Property, a Maryland real estate investment trust, through its controlling interest in Liberty Property Limited Partnership, is in the business of commercial real estate, serving customers in the United States and United Kingdom, through the development,

...

acquisition, ownership and management of logistics, warehouse, manufacturing, and R&D facilities in various markets. According to Liberty Property, "[it] has maintained a presence in th[e] [New Jersey] market for over 40 years and owns assets in the three major submarkets along the Turnpike corridor[,]" with properties in several cities, including Edison, Keasbey, and Moonachie, among others.[1] The Company's common shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol, "LPT."

8. Defendant William P. Hankowsky ("Hankowsky") is the President, Chief Executive Officer ("CEO"), and Chairman of the Board of the Company.

9. Defendant Thomas C. DeLoach, Jr. ("DeLoach") is a trustee of the Company.

10. Defendant Katherine Dietze ("Dietze") is a trustee of the Company.

11. Defendant Antonio Fernandez ("Fernandez") is a trustee of the Company.

12. Defendant Daniel P. Garton ("Garton") is a trustee of the Company.

13. Defendant Robert G. Gifford ("Gifford") is a trustee of the Company.

14. Defendant David L. Lingerfelt ("Lingerfelt") is a trustee of the Company.

15. Defendant Marguerite Nader ("Nader") is a trustee of the Company.

16. Defendant Lawrence D. Raiman ("Raiman") is a trustee of the Company.

17. Defendant Fredric J. Tomczyk ("Tomczyk") is a trustee of the Company.

18. Defendants Hankowsky, DeLoach, Dietze, Fernandez, Garton, Gifford, Lingerfelt, Nader, Raiman, and Tomczyk are collectively referred to herein as the "Individual Defendants."

---

[1] *See New Jersey: Liberty Property Trust (LPT)*, LIBERTYPROPERTY.COM, https://www.libertyproperty.com/our-markets/new-jersey (last visited Dec. 19, 2019); *Find a Property: Liberty Property Trust (LPT)*, LIBERTYPROPERTY.COM, https://www.libertyproperty.com/find-a-property?market=New%20Jersey (last visited Dec. 19, 2019).

19. Defendants Liberty Property and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

20. Prologis owns, manages and develops logistics facilities, with a focus in 19 countries. Prologis is incorporated in Maryland with principal executive offices located in San Francisco, California. Prologis's common stock trades on the NYSE under the ticker symbol, "PLD."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On October 27, 2019, Prologis and Liberty Property issued a press release announcing that they had entered into a definitive merger agreement whereby Prologis would acquire Liberty Property in an all-stock transaction. Under the terms of the agreement, Liberty Property shareholders would receive 0.675 shares of a Prologis common stock for each Liberty Property common share they own. The press release states, in pertinent part:

**Prologis to Acquire Liberty Property Trust for $12.6 Billion**

**One of the highest-quality U.S. logistics REITs will merge into the Prologis platform**

NEWS PROVIDED BY
**Prologis, Inc.**
Oct 27, 2019, 18:05 ET

SAN FRANCISCO and WAYNE, Pa., Oct. 27, 2019 /PRNewswire/ -- Prologis, Inc. (NYSE: PLD) and Liberty Property Trust (NYSE: LPT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire Liberty in an all-stock transaction, valued at approximately $12.6 billion, including the assumption of debt. The board of directors of Prologis and the board of trustees of Liberty have each unanimously approved the transaction.

\* \* \*

>The transaction deepens Prologis' presence in target markets such as Lehigh Valley, Chicago, Houston, Central PA, New Jersey and Southern California.
>
>The acquisition on an owned and managed basis comprises:
>
>- 107 million square foot logistics operating portfolio; 87 percent overlap with key markets
>- 5.1 million square feet of logistics development in progress
>- 1,684 acres of land for future logistics development with build-out potential of 19.7 million square feet
>- 4.9 million square foot office operating and development portfolio
>
>Prologis plans to dispose of approximately $3.5 billion of assets on a pro rata share basis. This includes $2.8 billion of non-strategic logistics properties and $700 million of office properties.
>
>*   *   *
>
>Under the terms of the agreement, Liberty shareholders will receive 0.675x of a Prologis share for each Liberty share they own. The transaction, which is currently expected to close in the first quarter of 2020, is subject to the approval of Liberty shareholders and other customary closing conditions.
>
>BofA Securities and Morgan Stanley are acting as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Prologis. Goldman Sachs and Citigroup are acting as financial advisors and Morgan, Lewis and Bockius LLP is serving as legal advisor to Liberty.

22.     On December 18, 2019, Defendants caused to be filed with the SEC a Form S-4/A Registration Statement under the Securities Act of 1933 in connection with the Proposed Transaction (the "Registration Statement").

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Registration Statement, which recommends that Liberty Property shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Liberty Property's and Prologis' financial projections; (ii) the financial analyses performed by Liberty Property's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Citigroup Global Markets Inc. ("Citi"), in connection with their fairness opinions; and

5

(iii) potential conflicts of interest involving Citi.

24. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the Liberty Board of Trustees and its Reasons for the Mergers; (ii) Certain Prologis Unaudited Prospective Financial Information; (iii) Certain Liberty Unaudited Prospective Financial Information; and (iv) Opinions of Liberty's Financial Advisors.

25. The shareholder vote on the Proposed Transaction is currently set for January 30, 2020. Unless and until the material misstatements and omissions (referenced below) are remedied, Liberty Property shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

      **1. Material Omissions Concerning Liberty Property's and Prologis' Financial Projections**

26. The Registration Statement omits material information concerning Liberty Property's and Prologis' financial projections.

27. The Registration Statement provides that, "in connection with the mergers and the other transactions contemplated by the merger agreement, Prologis' management provided to management of Liberty in connection with its evaluation of the mergers and the other transactions contemplated by the merger agreement, and to Liberty's financial advisors, Goldman Sachs and Citi, certain unaudited prospective financial information regarding Prologis' operations for fiscal years 2019 through 2022 (the "Prologis management forecasts")."

28. The Registration Statement provides a "table present[ing] a summary of the Prologis management forecasts for the calendar years 2019 through 2022 for Prologis on a

standalone basis."

29. The Registration Statement, however, fails to disclose the following concerning the Prologis management forecasts for Prologis on a standalone basis: (1) all line items used to calculate (i) Adjusted EBITDA, (ii) Core FFO, and (iii) AFFO Excluding Gains; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30. The Registration Statement provides that, "in connection with the mergers and the other transactions contemplated by the merger agreement, Liberty's management prepared and provided to the Liberty board in connection with its evaluation of the mergers and the other transactions contemplated by the merger agreement, and to its financial advisors, Goldman Sachs and Citi, including in connection with their respective financial analyses . . .[,] the Liberty management forecasts."[2]

31. The Registration Statement provides tables presenting summaries of the: (1) Liberty management forecasts relating to Liberty (on a standalone basis) for the calendar years 2019 through 2024; (2) unlevered free cash flow for Liberty (on a standalone basis) for the quarter ending December 31, 2019 and the calendar years 2020 through 2024; (3) Liberty management forecasts relating to Prologis (on a standalone basis) for the calendar years 2019 through 2024; (4) unlevered free cash flow for Prologis (on a standalone basis) for the quarter ending December 31, 2019 and the calendar years 2020 through 2024; (5) Liberty management forecasts relating to the Combined Company (on a pro forma basis giving effect to the transaction) for the calendar years 2019 through 2024; and (6) unlevered free cash flow for the Combined Company (on a pro forma

---

[2] The "Liberty management forecasts" are defined in the Registration Statement as "certain internal financial analyses and forecasts for Liberty and certain financial analyses and forecasts for Prologis on a standalone basis and on a pro forma basis giving effect to the transaction, in each case as prepared by the management of Liberty and approved for Goldman Sachs' and Citi's use by Liberty[.]" *See* Registration Statement at 72.

basis giving effect to the transaction) for the quarter ending December 31, 2019 and the calendar years 2020 through 2024.

32. The Registration Statement, however, fails to disclose the following concerning the Liberty management forecasts: (1) all line items used to calculate (i) Adjusted EBITDA, (ii) FFO, (iii) FFO/Share, (iv) AFFO; and (v) unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

33. When a company discloses non-GAAP financial metrics in a Registration Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[3]

34. The disclosure of Liberty Property's and Prologis' projected financial information is material because it would provide Liberty Property shareholders with a basis to project the future financial performance of Liberty Property and the combined company and would allow

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 19, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company or the combined company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

35. Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of Liberty Property's and Prologis' financial projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Liberty Property shareholders.

### 2. Material Omissions Concerning Goldman Sachs' and Citi's Financial Analyses

37. In connection with the Proposed Transaction, the Registration Statement omits material information concerning the analyses performed by Goldman Sachs and Citi.

38. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs and Citi in rendering their purported fairness opinions must be fairly disclosed to Liberty Property shareholders. The description of Goldman Sachs' and Citi's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without

the information described below, Liberty Property shareholders are unable to fully understand these fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Liberty Property shareholders.

### a. Goldman Sachs' Financial Analyses

39. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analyses for Liberty and Prologis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 4.5% to 5.5%, (ii) EBITDA multiples ranging from 20.0x to 24.0x to a terminal year estimate of Adjusted EBITDA to be generated by Liberty Property, (iii) EBITDA multiples ranging from 23.0x to 27.0x to a terminal year estimate of the Adjusted EBITDA to be generated by Prologis, and (iv) perpetuity growth rates ranging from 0.3% to 1.9% for Liberty Property, and 1.0% to 2.4% for Prologis; (2) the range of illustrative terminal values for Liberty Property and Prologis; (3) Liberty Property's and Prologis' respective illustrative terminal values of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (4) Liberty Property's and Prologis' respective net debt and preferred equity and non-controlling interests as of September 30, 2019; and (5) the number of fully diluted outstanding shares of Liberty Property and Prologis.

40. With respect to Goldman Sachs' "*Illustrative Present Value of Future Share Price Analys[i]s for Liberty Standalone*," the Registration Statement fails to disclose: (1) Goldman Sachs' basis for applying price to next twelve months ("NTM") FFO multiples ranging from 17.0x to 21.0x; and (2) the individual inputs and assumptions underlying the discount rate of 5.5%.

41. With respect to Goldman Sachs' "*Illustrative Present Value of Future Share Price*

*Analys[i]s for . . . Prologis Standalone*," the Registration Statement fails to disclose: (1) Goldman Sachs' basis for applying price to NTM FFO multiples ranging from 22.0x to 26.0x; and (2) the individual inputs and assumptions underlying the discount rate of 5.5%.

42. With respect to Goldman Sachs' "*Illustrative Present Value of Future Share Price Analys[i]s for . . . Pro Forma Value to be Received per Liberty Common Share*," the Registration Statement fails to disclose: (1) Goldman Sachs' basis for applying price to NTM FFO multiples ranging from 21.5x to 25.5x; and (2) the individual inputs and assumptions underlying the discount rate of 5.5%.

43. With respect to Goldman Sachs' "*Illustrative Implied Premia of Precedent REIT Transactions*" analysis, the Registration Statement fails to disclose: (1) the transactions observed by Goldman Sachs in its analysis; and (2) the premiums paid in the transactions.

   b. **Citi's Financial Analyses**

44. The Registration Statement fails to disclose the following concerning Citi's "*Discounted Cash Flow Analyses*" of Liberty Property and Prologis: (1) the estimated terminal values of Liberty Property and Prologis; (2) the individual inputs and assumptions underlying the (i) Adjusted EBITDA multiples of 18.8x to 22.8x for Liberty Property and of 22.1x to 26.1x for Prologis, and (ii) discount rates ranging from 5.72% to 6.52% for Liberty Property and from 6.44% to 7.38% for Prologis; (3) all line items used to calculate the unlevered, after-tax free cash flows that Liberty Property and Prologis were each expected to generate during the period from October 1, 2019 through December 31, 2024; and (4) Liberty Property's and Prologis' respective illustrative terminal values of non-stabilized assets in their respective terminal years based on the incremental stabilized net operating incomes.

45. The Registration Statement fails to disclose the following concerning Citi's

"*Combined Company DCF Analysis*": (1) the estimated terminal value of the combined company; and (2) the individual inputs and assumptions underlying the (i) selected range of Adjusted EBITDA multiples of 22.1x to 26.1x, and (ii) discount rates ranging from 6.44% to 7.38%.

46. With respect to Citi's analysis of research analysts' price targets for Liberty Property common shares, the Registration Statement fails to disclose: (1) the price targets observed by Citi in its analysis; and (2) the sources thereof.

47. With respect to Citi's analysis of the estimated NAV of Liberty Property's and Prologis's assets, the Registration Statement fails to disclose the research analysts' estimates.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Citi

48. The Registration Statement omits material information concerning potential conflicts of interest involving Citi.

49. The Registration Statement discloses that the "engagement letter between Liberty and Goldman Sachs provides for a transaction fee that is estimated, based on the information available as of the date of announcement, at approximately $30 million, all of which is contingent upon consummation of the transaction."

50. The Registration Statement provides that Liberty "has agreed to pay Citi for its services in connection with the proposed transaction an aggregate fee of approximately $20 million, of which a part was payable upon delivery of Citi's opinion and the large majority is payable contingent upon consummation of the transaction."

51. The Registration Statement, however, fails to disclose the specific amount of Citi's fee that is contingent upon the consummation of the Proposed Transaction.

52. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of

a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

53. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Liberty Property shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

54. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

56. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

57. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to

vote on the Proposed Transaction.

58. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

64. In addition, as the Registration Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 19, 2019

Respectfully submitted,

**HALPER SADEH LLP**

/s/Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)

375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*